Case 5:08-cv-01542-DEW-MLH   Document 110   Filed 09/29/10   Page 1 of 8 PageID #: 765

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HMB INTERESTS, L.L.C., ET AL. | CIVIL ACTION NO: 08-1542 |
| VERSUS | JUDGE DONALD E. WALTER |
| CHESAPEAKE LOUISIANA L.P., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss [Doc. #2] filed by Defendants Chesapeake Louisiana, L.P., Red River Land Services, LLC, Petrohawk Properties, L.P., and Delta Lands Explorations, Inc., and a Motion to Dismiss [Doc. #57] filed by Defendants EnCana Oil & Gas (USA) Inc. and Audubon Oil and Gas Corporation. Plaintiffs, HMB Interests, LLC, Palmetto Farms, LLC, Keith Burns Jackson, John Gladney, Velma Gladney, and Gladney Development LLC oppose these motions. [Docs. #37 and 64]. For the reasons stated herein, Defendants' motions [Docs. #2 and 57] are hereby **GRANTED**. Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. A judgment consistent with this finding shall issue contemporaneously with this memorandum ruling.

### I.     Background Information

Plaintiffs filed suit in the Eleventh Judicial District Court, DeSoto Parish, State of Louisiana, individually and on behalf of all others "who signed mineral leases, or extensions of pre-existing mineral leases, with any of the defendants, of which mineral leases have been assigned to any of the defendants, affecting land within Bienville, Bossier, Caddo, Claiborne, DeSoto, Jackson, Lincoln, Natchitoches, Red River, Sabine, Webster or Winn Parishes, in Louisiana from July 1, 2006 through June 30, 2008, without knowledge of the presence under their lands of the Haynesville Shale natural

gas formation." [Doc. #4, ¶1]. Defendants subsequently removed this matter to federal court under the provisions of the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. §§ 1332 and 1453.

Plaintiffs allege that when the leases at issue were negotiated they "did not know that the Haynesville Shale formation, perhaps the richest natural gas formation in the United States, lay beneath their lands." [Doc. #4, ¶8]. Plaintiffs assert that when the leases were negotiated and signed that "defendants had long known of the presence and commercial exploitability of the Haynesville Shale and had taken steps to ensure that this information did not become public." [Doc. #4, ¶9]. Plaintiffs further allege that Defendants paid bonus payments of only 1% of their true market value and stipulated to royalty percentages lower than the true fair market value. [Doc. #4, ¶10].

Plaintiffs state that they "would have never entered into the foregoing leases had it not been for their error as to what mineral formations lay beneath their lands." [Doc. #4, ¶11]. "This error concerned a cause without which the foregoing leases would not have been entered, and this cause was known, or should have been known, to the defendants." [Doc. #4, ¶12]. Plaintiffs assert that the error concerned the substantial quality of the contractual object (the mineral formations) and was also "a circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation." [Doc. #4, ¶13]. Plaintiffs further allege that the Haynesville Shale formation was a substantial quality of the contractual object of the mineral leases within Louisiana Civil Code Articles 1949 and 1950, such that Plaintiffs' error regarding the object vitiates their consent and entitles them to rescission of the mineral leases, or alternatively, damages in accordance with Louisiana Civil Code Article 1952. [Doc. #4, ¶¶14-15].

Plaintiffs do not allege any fraud or misrepresentation during the negotiation of the mineral leases by any of the Defendants, including the entities who initially acquired the leases from the

Plaintiffs.

## II.     Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." When considering the motion, a district court "must take factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of plaintiff." *Fernandez-Montes v. Allied Pilots Assoc., et al.*, 987 F.2d 278 (5th Cir.1993). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotation and citation omitted). A complaint attacked by a Rule 12(b)(6) motion does not need to contain detailed factual allegations; however, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice. *Id.* The plaintiff's obligation is "to provide the grounds of his entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

The Fifth Circuit has recently held that to survive a 12(b)(6) Motion to Dismiss "the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) citing *Twombly*, 127 S.Ct. at 1974. Those "[f]actual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the Petition are true (even if doubtful in fact)." *Id.*

## III.    Law and Analysis

The mineral leases at issue are contracts by which the lessor grants the lessee the right to explore for and produce minerals, generally in exchange for a signing bonus and royalty payments. *See* LSA-R.S. 31:114. Mineral leases are governed by the Louisiana Mineral Code. *See* La. Civ.

3

Code art. 2672. However, the Mineral Code is supplementary to the Louisiana Civil Code and is applicable specifically to the subject matter of mineral law. LSA-R.S. 31:2. In the event that the Mineral Code and the Civil Code conflict, the Mineral Code will prevail. *Id.* If the Mineral Code is silent as to a particular situation, the Civil Code or other laws are applicable. *Id.* As such, Courts apply the general rules of contract interpretation when considering contracts involving mineral rights. *Stephenson v. Petrohawk Properties, L.P.*, No. 45,296 (La. App. 2d Cir. 06/02/2010), 37 So.3d 1145.

Under Louisiana law, a "contract is formed by the consent of the parties established through offer and acceptance." *See* La. Civ. Code art. 1927. The consent of a contracting party may be vitiated by error, fraud, or duress – referred to as the three "vices of consent". *See* La. Civ. Code art. 1948. Only alleged "error" is at issue in this case. The Louisiana Civil code provides that "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ. Code art. 1949. An "error concerns cause" when it "bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person, or the qualities of the other party, of the law, or any other circumstance that the parties regarded, or should have regarded, as a cause of the obligation." La. Civ. Code art. 1950.

Plaintiffs argue that they have a valid cause of action because "they would never have entered into the foregoing leases had it not been for their error as to what mineral formations lay beneath their lands." [Doc. #37 at 3]. The error is alleged to have "concerned the substantial quality of the minerals and mineral formations under Plaintiffs' lands and was also a circumstance that the parties regarded, or should have regarded, as the cause of the obligation." [Doc. #37 at 4]. Plaintiff's argue that the substantial quality of the Haynesville shale is significantly different from "an ordinary

4

reservoir of hydrocarbons with no exceptional qualities []." [Doc. #37 at 4]. Rather, Plaintiffs argue that they unknowingly assigned their mineral rights to "perhaps the most substantial and richest natural gas reservoir ever discovered in the state of Louisiana, possibly in all of North America." [Doc. #37 at 4]. "To state that such a gas reservoir is the 'same thing', or is not a different object from an ordinary gas reservoir is to negate the obvious and defy reason and common sense." [Doc. #37 at 4].

By example, Plaintiffs suggest that comparing the Haynesville shale formation to an ordinary gas reserve is similar to comparing a "shotgun style house" to Buckingham Palace because they are both dwellings; an ordinary horse to a thoroughbred capable of winning the triple crown; or an ordinary bayou to the Mississippi River because they are both streams of water. [Doc. #37 at 4-5]. As support, Plaintiffs cite *Gullotte v. Woods*, No. 16136 (La. App. 2d Cir. 1984), 448 So. 856, wherein the Court found that a buyer's belief that he had purchased bars of gold when in fact he had purchased bars of brass was an error concerning the substance or substantial quality of the thing sufficient to justify an invalidation of the contract on the grounds of error. *Id.* at 858.

The Louisiana Second Circuit Court of Appeals recently rendered an opinion addressing this exact argument. *See Cascio et al. v. Twin Cities Development, LLC*, No. 45,643, (La. App. 2d Cir. 9/22/2010), 2010 WL 3666323. The Court found that even accepting as true that the plaintiffs were unaware of the Haynesville Shale formation while Twin Cities had knowledge of its potential value, this lack of awareness was insufficient to rise to level of error as to the substantial quality of the object of the contract such that it would vitiate the plaintiffs' consent. *Id.* The Court noted that "it should have been apparent to the plaintiffs that Twin Cities entered into such a lease agreement in order to explore for and hopefully discover and produce oil, gas, and minerals from the land." *Id.*

5

The alleged error as to the substantial quality of the object was found to be unlike mistaking brass for gold. *Id.* "A mistake that a bar is made of gold when it is really made of brass is a finite determination. Here, however, both the plaintiffs and the defendants could speculate as to the existence and value of minerals found on the trust property. There could be no finite determination due to the [] speculative nature of mineral exploration." *Id.*

Mineral exploration is inherently fraught with uncertainty and risk. Whether minerals may be extracted with ease or great difficulty, and whether the market conditions will be favorable at a future date, cannot be determined (or considered finite) at the time a lease is signed. Judge Hicks succinctly described the speculative nature of mineral exploration in a similar case as follows:

> Plaintiff leased the property to Defendant because Defendant was willing to assume the incidental risk of exploring the land and exploring any mineral deposits found therein. Once news of the Haynesville Shale broke, Plaintiff came into court seeking an additional profit. The *Wilkins* court's observations are apt in the context of this claim. To reiterate: in the admitted speculative nature of the intangible right it is impossible that there could be any fixed and dependable valuation. The price may be at the very lowest today and by 'leaps and bounds' reach the very peak of prices tomorrow, dependant on the production or nonproduction of oil and gas in the neighboring territory. [*Wilkins v. Nelson*, 99 So. 607, 609 (La. 1924)].

*Thomas v. Pride Oil & Gas Properties, Inc.*, 633 F.Supp.2d 238, 244 (W.D. La. 2009)(internal quotation and citation omitted).

Although Plaintiffs in this instance are seeking the rescission of their mineral leases rather than additional profits, the *Thomas* analysis is instructive. Plaintiffs entered into a contract with Defendants specifically for the purpose of allowing the Defendants to explore and exploit their land for oil and gas, at the Defendants' risk, in exchange for consideration. Plaintiffs are attempting to characterize the Haynesville Shale as something different than what it is - a mineral formation containing natural gas. Even if this Court assumes that Plaintiffs are correct in their statement that

6

the Haynesville Shale is perhaps the richest natural gas formation in the United States, it does not change the substantial quality of the object. At its essence, shale and the natural gas that it produces, are minerals for which Plaintiffs negotiated a mineral lease. Assuming that Plaintiffs did not know of the existence of the Haynesville Shale below their property when they signed their respective mineral leases, this Court will not hold that Plaintiffs alleged error as to the existence of a specific mineral formation constitutes an error concerning "a cause without which the obligation would not have been occurred." *Thomas* 633 F.Supp.2d at 244; La. Civ. Code art. 1949. Accordingly, Plaintiffs claims based on Louisiana Civil Code articles 1949 and 1950 are dismissed with prejudice.

Although Plaintiffs do not make a specific claim for rescission based on a deficiency in the value they were paid by Defendants, the Court notes that the Complaint asserts facts that are consistent with such a claim. Specifically, Plaintiffs assert that Defendants paid bonus payments of only 1% of their true market value and stipulated to royalty percentages below the fair market value of 25% to 30%. [Doc. #4, ¶10]. Under certain circumstances, Louisiana law allows for rescission of a contract when the price of the contract is out of proportion with the value thing sold. *See* La. Civ. Code art. 2464. Rescission of a contract for the sale of immovable property is generally authorized as "lesion beyond moiety" when the price paid for the immovable property is less than one half of the fair market value. La. Civ. Code art. 2589. However, Mineral Code specifically trumps this general rule of contract by stating that "[a] sale of a mineral right is not subject to rescission for lesion beyond moiety." La. R.S. 31:17. It has been the law in Louisiana for more than eighty years that the sale of mineral rights "cannot be regarded as... falling within the terms of the law which affords relief on the score of lesion; its inherit nature and character being such as not to be susceptible of having an intrinsic definite and fixable value." *Thomas*, 633 F.Supp.2d at 243

(citing *Wilkins*, 99 So. at 608). "To pursue a claim for purported deficiency in the value of these lease rights, be it in error or fraud, is to pursue a claim for lesion beyond moiety." *Thomas*, 633 F.Supp.2d at 244 (internal quotation and citation omitted). Thus, even if this Court accepts Plaintiffs' allegations as true, the mineral leases may not be rescinded on the grounds that the value paid was deficient.

Plaintiffs have failed to state a valid or plausible cause of action sufficient to survive Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Twombly*, 127 S.Ct. at 1964-65.

### IV. Conclusion

For the reasons stated herein, Defendants' motions to dismiss [Docs. #2 and #57] are hereby **GRANTED**. Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED**, this _29_ day of September, 2010.

*/s/ Donald E. Walter*
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

8